Williams, J.
The question in the case arises upon the instruction of the court to the jury. The chapter of the Revised Statutes relating to wills, contains the provision that: “If no person interested shall, within two years after probate had, appear and contest the validity of the will, the probate shall be forever binding, saving, however, to infants, and persons absent from the state, or of insane mind, or in captivity, the like period, after the respective disabilities are removed.” Revised Statutes, section 5933. And section 5866, provides that: “An action to contest a will or codicil shall be brought within two years after the same has been admitted to probate, but persons within the age of minority, of unsound mind, imprisoned, or absent from the state, may bring such action within two years after such disability is removed.”
Where, at the time a will or codicil is admitted to probate, a person who may contest it, is under two or more of the disabilities mentioned in the statute, his right of action is not barred until the *118 expiration of the statutory period, after the longest continuing disability is removed; and, so long as the right of action is saved to any plaintiff, the action brought by him inures to the advantage of all persons interested with him in the estate; for the will, being an entirety, is wholly inoperative when set aside, at the suit of any party, and the estate must then be divided and distributed under the law. It is conceded that Mary G. Powell attained the age of majority more than two years before the action below was brought, and, that none of the other plaintiffs were within the saving clause of the statute; so that the legal question here is, whether, where a person is under the two disabilities of infancy, and absence from the state, when his right of action accrues, his subsequent temporary presence in the state, while he is yet an infant, has the effect of removing his disability of absence from the state.
The question has not heretofore received the consideration of this court, nor, so far as we have been able to discover, of the court of last resort of any of the states. It appears to be well settled, however, that exceptions in statutes of limitations in favor of persons under disability, should be strictly construed, and never extended beyond their plain import. The rule is, that in the absence of a saving clause the statute runs against all persons, whether under disability, or not; and with such a clause, it runs alike against all who cannot bring themselves clearly within some one of the excepted classes, and against those who can, according to the terms of the clause. The general provisions of the statute are restrained only so far as there are express words of exception; and it is therefore incumbent on those who claim *119 the benefit of the exception to show that they are, in all particulars, within its descriptive terras and conditions. And, where the statute has created specific exceptions, all others must be deemed excluded. The courts are without authority to enlarge or change those specified, or establish others, though in particular cases the ends of justice might seem to be subserved, if it were done. It was said by Chancellor Kent, in Demarest v. Wynkoop, 3 John. Ch. 129, that: “The doctrine of any inherent equity creating an exception as to any disability, where the statute of limitations creates none, has been long, and, I believe, uniformly exploded. General words in the statute must receive a general construction, and if there be no express exception, the court can create none.” And, in Amy v. Watertown, 130 U. S., 320, it is declared to be the general rule respecting statutes of limitations, that the language of the act must prevail, and no reason based on apparent inconvenience or hardship will justify a departure from it. True, in a few instances, courts have apparently made exceptions not found in the statute; but they are only such as arise from a state of war, or other imperative necessity, as when the courts are shut, or by act of law one party is forbidden to sue, or the other is rendered incapable of being sued. Persons within the saving provisions of the statute, are not precluded from suing while the disability lasts. The time within which they may sue, is simply extended for a definite period after the disability ceases, and when it ceases they stand upon the same footing as other persons. The statute begins to run against them from that time, and once started, nothing can prevent the bar but suit *120 brought within the prescribed period. The rule, which is generally maintained in this country, was announced by Lord Talbot, in Belch v. Harvey, 3 P. Wms. 287, in the following language: “The persons who are the subject of the proviso are not disabled from suing; they are only excused from the necessity of doing it during the continuance of the legal impediment; therefore, when that difficulty is removed, the time allowed for their further proceeding should be shortened. If they would excuse a neglect under the first part of the proviso, should they not do it upon the terms on which such excuse was given. ’ ’
Necessarily, a disability is removed, within the purview of the statute, when it no longer exists ; that of absence from the state, ends when the personal presence of the party in the state begins; and once ended by such presence, though it be but for a temporary purpose and of short duration, the disability does not revive by subsequent absence, however permanent in its character, or long continued. Faw v. Roberdeau's Exr., 3 Cranch, 174. This is not disputed, when applied to adult persons of sound mind; but, it is contended, the rule should be different with respect to infants, who are under the control of those in whose custody they are placed, and incapable of binding themselves by their own acts, or by their consent to the acts of those having control over them; and upon that ground, it is claimed Mary G. Powell’s presence here, in company with her stepmother, did not terminate her disability of absence from the state, which theretofore existed. We find nothing in the statute which gives support to that position. Every person who is absent from the state when his cause of action accrues, whether of consenting *121 capacity or not, is included 'in the saving clause of the statute under consideration. The only fact made necessary to the creation of that disability, is actual absence from the state; and, in the nature of things, the only fact essential to its removal, in any case, is the actual presence of the person in the state; no distinction having been made by the statute, either with respect to the disability, or its removal, on account of the age, or capacity of the person, or other circumstance. It was undoubtedly competent for the legislature to have made the distinction; but having failed to do so, when the whole subject was before that body, we must conclude the omission occurred because such provision was deemed inadvisable; and it may have been so considered, for the reason, that by the perpetuation of disabilities, resulting from a provision of that kind, the settlement and distribution of estates might be unreasonably delayed, while the g’eneral policy of our law favors the speedy settlement of estates, and the repose of titles derived from them. At all events, the omission, if it be one, must be supplied by the legislative body, and cannot be by the courts.
Under an English statute of limitations which saved to persons “beyond the seas” when their cause of action accrued, a limited time after their return, within which to sue, it was held, in the case of Sturt v. Mellich, 2 Atkyn, 610, that the statute run from the time the party was returned, and his going abroad again gave him no privilege, “for that was gone by his having once returned to the kingdom, after his cause of action accrued.” In the course of the opinion, the Lord Chancellor Hardwicke remarked: “Suppose a creditor, both of non-sane memory, and out of the *122 kingdom, comes into the kingdom, and then goes out of the kingdom, his non-sane, memory continuing; why his privileg’e, as to being .out, is gone; and his privilege as to non-sane, will begin from the time he returns to his senses.” The observation above quoted, while not necessary to the decision of the exact question involved, and merely illustrative of the point ruled, has been accepted by text writers in this country, as a correct statement of the law. Angelí on Limitations, section 198. Wood on Limitations, section 6, p. 24. The English statute, like ours, makes no distinction, so far as the disability arising from absence is concerned, on account of the mental condition, or age of the absent person ; so that, the rule stated by Lord Hardwicke is not less applicable to cases arising under our statute, than to those under the one which was before him; and is, moreover, in accordance with what we regard as the proper interpretation of our statute.
It is claimed, however, that the two sections of the act we have been considering, should be construed in connection with section 4989, of the Revised Statutes, which provides that: “If, when a cause of action accrues against a 'person, he is out of the state, or has absconded, or concealed himself, the period limited for the commencement of the action shall not begin to run until he comes into the state, or while he is so absconded or concealed ; and if, after the cause of action accrues, he depart from the state, or abscond or conceal himself, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought.” The language “comes into the state,” in the above section, it is said, imports an act of choice, involving *123 capacity to choose, which should be accepted as indicating a legislative intent that a like act is necessary to the removal of the disability of absence under the other sections. It is not necessary to determine whether the language referred to has the effect suggested; for granting’ that it has, the result claimed by no means follows. The section relates entirely to persons against whom a cause of action accrues, and prevents them from availing themselves of their absence or concealment as a means of defeating the action. The cases to which it applies are different in their nature from those covered by the other two sections, and required different language to provide for them; it therefore throws no light on the construction of the other sections.

Judgment affirmed.